JOHN ALLEN v. THE STATE.

No. 14191.   Delivered October 14, 1931.

The opinion states the case.

*Max Coleman,* of Lubbock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction is for unlawfully carrying a pistol; punishment assessed at a fine of $100.

The information in this case charged, in the first count, the appellant with unlawfully carrying a pistol on his person. The second count charged the appellant with unlawfully going into a place where persons were assembled for amusement, to-wit, a dance hall and restaurant in the negro section of Slaton, Texas, and that the defendant did then and there carry about his person a pistol. To the same effect substantially is the third count in the information.

Will Earnest, a witness for the state, testified that he was a deputy sheriff in Lubbock county; that he helped arrest the defendant; that they arrested him about 2:30 A. M. on November 9, 1930; that they arrested the defendant at his place in Slaton, Texas, where he operated a restaurant; that at the time of the arrest appellant was about 40 feet east of his house and about 20 feet from the toilet; that he had a six shooter on his person; that they arrested him, brought him to Lubbock, and put him in jail. He testified that Mr. Conley was with him.

O. B. Conley, deputy sheriff, testified that he helped arrest the defendant about 2 o'clock on the night of November 9th. He further testified that he did not see the defendant in his house that night; that he did not see him go there or come out; that he was east of a little house back of his restaurant when they arrested him and that the appellant told him that he had had some trouble with a negro couple that night and had to put them out of his place of business and that he was expecting them to come bask and cause trouble, and said he took the ice pick off the woman, but it was his ice pick; that he did not have a search warrant to search the negro and did not need one to search a negro. The state then closed its direct testimony.

John Allen, the defendant, admitted having the pistol on his person and testified that he was on his own premises, that is, the place he was occupying as a lessee, and that he was not off his own premises at any time during the time he had the pistol on. He testified that he lived on said premises and operated a restaurant in his private residence; that he had lived there about two years; that on the night in question he had had some trouble with a negro couple and had sent word to Mr. Tom Able, the chief of police at Slaton, to come out and help him; that before the chief of police arrived the couple had left, but had made many threats against his life; that after starting the couple away from his premises, he started to the toilet, which is out of doors and on the east edge of the lot which he had leased; that on account of the threats made against him by the couple, he went to the door of his kitchen, which is cut off from his restaurant and residence by a partition, and told the cook to hand him his gun, intending to put it up as soon as he returned from the toilet; that he had the gun for protection and did not at any time enter his residence or restaurant while he had the pistol.

As to having telephoned the chief of police, the defendant was cor-

roborated by Tom Able, the chief of police at Slaton. Able further testified that appellant had the place leased from a Mexican by the name of Juan Reyes and had been so living there for about two years.

The witness Robert Longley also corroborated the testimony of the appellant, John Allen, to the effect that he gave him the pistol out of the kitchen window and that the appellant did not come back into the house at all after he got the pistol, and before he was arrested.

After the defense had closed its case, the state's witness, O. B. Conley, was recalled by the state, and the following testimony, over the objection of the appellant, was admitted:

"The defendant was going out to a pile of cans southeast of his house to get some whiskey. I believe he was in his residence with a gun on because I saw him come around the south side of his house and I supposed he came out of the west door. I do not believe he was on his own premises. I heard once he was not."

Appellant objected to all of this testimony for the reason that same was a conclusion of the witness and not the proper manner to prove the ownership of the premises; that defendant was not being tried on a whiskey charge and no whiskey was found and the premises was searched and none was found in the pile of cans, nor introduced during the trial, and that no witness testified he saw him, and that all of same was merely an opinion of the witness.

Said bill of exception further shows that at this time, the state's witness, O. B. Conley, without being questioned by either the state or the court, voluntarily exclaimed:

"He was present. Three months ago Juan Reyes told me he did not have those premises leased."

Appellant then and there objected further to the testimony of the state's witness for the reason that this latter statement was a voluntary, self-serving declaration made for the express purpose of unfairly convicting the defendant. The court overruled said objection and permitted the testimony of the witness to remain before the jury, although the defendant requested the court to instruct the jury not to consider said testimony.

Appellant's guilt or innocence depended upon the solution of the issue as to whether or not he carried the pistol any other place than upon the premises under his control and as to whether or not he was in the restaurant with the pistol. The opinion of the said witness objected to was the only evidence that in any way tended to show that appellant was not upon his premises or was ever in his restaurant with a pistol. This solution against appellant was aided by the opinion of the deputy sheriff, Conley, and was purely opinion testimony upon the most material issue in the case. It was therefore hearsay and opinion testimony of a hurtful character upon the very issue the jury was empaneled to try

and should have been excluded. The failure to do so was such error as calls for a reversal of this case. Appellant's position on this point is supported in numerous decisons of this court, some of which follow: Steagald v. State, 24 Texas Crim. App., 207, 5 S. W., 853; Williams v. State, 30 Texas Crim. Rep., 429, 17 S. W., 1071; Coyle v. State, 31 Texas Crim. Rep., 604, 21 S. W., 765; Bennett v. State, 95 Texas Crim. Rep., 70; Davis v. State, 114 Texas Crim. Rep., 72, 24 S. W. (2d) 417; Starkey v. State, 115 Texas Crim. Rep., 552, 27 S. W. (2d) 175; Anthony v. State, 29 S. W. (2d) 784; Boles v. State, 108 Texas Crim. Rep., 204, 299 S. W., 407.

Alleged error in failing to give peremptory instruction on circumstantial evidence and refusal of the court to grant a new trial to procure certain testimony are also assigned as error. While raising more or less serious questions, such matters are not likely to occur again and therefore are not discussed.

For the error above indicated, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.