## ALEX CONNER v. THE STATE.

No. 16002.   Delivered June 21, 1933.
Rehearing Denied November 8, 1933.
Reported in 63 S. W. (2d) 1036.

The opinion states the case.

*E. J. Conn,* of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Burglary is the offense; punishment, 2 years in the penitentiary.

The offense charged to have been committed by the appellant was the burglary of a bank at Huntington, Texas. A witness by the name of Dock Means testified that he had lived at Lufkin, Texas, for about 9 years; that he was an officer of Angelina county and had been for about 2 years; that he had lived in Nacogdoches and Angelina county practically all his life; that he knew the appellant, Alex Conner, and became acquainted with him when Conner was one of the county commissioners. He testified further that the appellant approached him about two months before the bank was actually burglarized and told him that when he came to Huntington to look him up, that he wanted to talk to him; that he was afterwards introduced by the appellant to Lee Bass and Bass stated their plan to him to the effect that they were figuring on robbing the bank at Huntington and the appellant told him that they wanted him to take Mr. Jones, who was the nightwatchman, out of town while they were entering the bank building; that the appellant told them that he knew all about the safe and had been in there and worked on the safe and knew how much money was in the safe; that there was probably 10 or 12 thousand dollars in the safe, and they then talked about getting a trailer to haul the safe off and they would let him know when they wanted him to get the nightwatchman out of town. He testified further that he had communicated what they had told him to a ranger by the name of H. B. Purvis and he told Purvis what the parties were figuring on doing. It appears from the testimony that the said witness and Purvis and three other rangers had laid for the appellant on several occasions when he did not appear. He further testified that the night the bank was burglarized he saw the appellant park near the drug store across from the bank building but he did not speak to him. The witness further testified that on the night of the burglary the safe in the bank had been moved from its position out to the back door of the bank building and the back door of the bank had been broken in and the facing inside the bank had been torn from a partition between the bank and the office. There were tracks showing that a truck and a trailer had been driven up to the back door of the bank and afterwards Bass and a man by the name of Cal Jones had been arrested while driving in a truck. The tires on said truck clearly corresponded to the tracks found back of the bank.

The state also introduced a witness by the name of Claude M. Jones, who testified in substance that he, together with the appellant, and Lee Bass, were the persons who broke into the

bank and moved the safe to the door, but they could not get it on the trailer of the truck. He testified that he and Bass were the parties who went into the bank and the appellant was outside looking around keeping watch and that the appellant had brought a crow bar with him to be used in opening the door; that the appellant was walking around looking to see if anybody was coming in sight and reported to the witness and Bass probably every five minutes and would say, "Everything is all right, go ahead"; that they got the safe nearly to the back door but were unable to load it onto the truck; that the appellant then said it was nearly daylight and they had to get away from there. The state introduced other evidence which tended to corroborate the testimony of the witnesses Means and Claude M. Jones.

The appellant did not testify but offered evidence as to his general reputation for being a peaceable and law-abiding citizen.

The court in his main charge charged the jury as follows:

"The witnesses Claude Jones and Dock Means are accomplices, if any offense was committed you are instructed that you cannot convict this defendant upon their testimony unless you first believe, beyond a reasonable doubt, that the testimony of the said Claude Jones and Dock Means is true, and that it connects the defendant with the offense charged in the indictment and unless you further believe, beyond a reasonable doubt, that there is other evidence in the case corroborative of the testimony of the said Claude Jones and Dock Means tending to connect the defendant with the commission of the offense charged in the indictment, and the corroboration must be by testimony other than that of an accomplice and then from all the evidence you must believe, beyond a reasonable doubt, that the defendant is guilty. If you do not so believe, or if you have a reasonable doubt as to any of the above elements, you will find the defendant not guilty."

The appellant excepted to said charge on the ground that it was erroneous. From appellant's brief it seems that his position is that the charge was susceptible of the construction that it only required the jury to believe that the testimony of the accomplices tended to connect the appellant with the commission of the crime and also required corroborative evidence tending to connect him with the offense charged. In other words, we understand appellant's contention to be that the charge contained two tendencies, but an examination of the charge shows that it does not contain this error because the jury were told in the first instance that they had to believe that the testimony of

the accomplices was true and that it connected the appellant with the offense charged. Appellant cites a number of cases which he contends support his position. An examination of said cases cited shows that this court had reversed said cases because the court in said cases charged that they could not convict the defendant on the testimony of said accomplices alone unless they first believed that their testimony was true and tends to connect the defendant with the offense charged, and this court has uniformly held that said charge was defective and that it was error to charge the jury that if the testimony of the accomplice tends to show defendant was guilty that the corroboration is sufficient if it tends to show the commission of the offense, and that two tendencies do not establish a fact, and that the expression "tends to show" should not be used when it applies to the testimony of the accomplices directly. See Branch's Ann. P. C., sec. 710, and authorities cited thereunder. Oates v. State, 103 S. W., 859; Grant v. State, 132 S. W., 350; Sealey v. State, 47 S. W. (2d) 295; Alsup v. State, 49 S. W. (2d) 749.

The accomplice witnesses having made out a complete case, the charge would have been more applicable if it had used the words, "and showed defendant to be guilty of the offense charged," instead of using the words "and *connected* him with the offense charged." The charge given by the court would be correct in a case in which the accomplice did not make out a complete case. However, the error is harmless.

Among the grounds set up by the appellant for a new trial was the allegation that the jury discussed his failure to testify. The evidence developed on the hearing of the motion for new trial was brought forward by a statement of facts. All twelve of the jurors testified upon said hearing. The juror L. G. Council, who testified that he was the man who made the remark, testified that he made a remark once that "if appellant had taken the sand himself it might have been different." He testified that he just made the remark casually. One or two other jurors testified that they heard a remark made of that character but that there was no discussion of the fact of the failure of the appellant to testify. The other jurors testified that they did not hear the remark made. From a careful perusal of the testimony taken upon said motion for new trial, it appears that the allusion made by any juror to the failure of the defendant to testify was nothing more than a casual one and from the testimony we do not believe that such failure was taken by any of the jurors as a circumstance against the appellant in passing

upon the case. In the case of Manley v. State, 92 Texas Crim. Rep., 537, 244 S. W., 533, Judge Hawkins, in rendering the opinion of the court, said: "To be good ground for a new trial, there must be more than an allusion by the jury to a defendant's failure to testify. It must be shown that the jury discussed the failure to testify to such an extent that it appears they took such failure as a circumstance against him." Citing Leslie v. State, 49 S. W., 73; Mason v. State, 81 S. W., 718; Parrish v. State, 48 Texas Crim. Rep., 347, 88 S. W., 231.

We have examined the other complaints and none of same present reversible error.

No reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant insists in his motion for rehearing that we either failed to get the point of his attack on the charge, or else had declined to follow the precedents cited in his original brief. The court's charge on accomplice testimony is quoted in our former opinion, and it is manifest that the court was wrong in telling the jury that they could not convict on the accomplice testimony "unless it connects the defendant with the offense charged." We so held in our former opinion.

All of the cases cited by appellant in his brief on this point have been again examined in the light of the motion. Baggett v. State, 144 S. W., 1136; Grant v. State, 132 S. W., 350; Fruger v. State, 120 S. W., 197; Sealey v. State, 47 S. W. (2d) 295; Oates v. State, 103 S. W., 859, and Alsup v. State, 49 S. W. (2d) 749, cited in said brief, are all cases in which the trial courts in their charges told the jury that they could not convict on the accomplice testimony unless it "tended to connect," or "tended to show," the guilt of the accused. Clearly these cases are not in point,—the charge here telling the jury that they could not convict on the accomplice testimony unless it connected the defendant, etc. Ehrlich v. State, 281 S. W., 548, and Burkhart v. State, 16 S. W. (2d) 1090, also cited, have no sort of application, and must have been cited under misapprehension. Abbott v. State, 94 Texas Crim. Rep., 31, and Anderson v. State, 95 Texas Crim. Rep., 352, also cited, are applicable, but hold

contrary to appellant's contention, and in line with what we said on this point in our former opinion. In other words, the testimony of the accomplices referred to in the court's charge, if believed by the jury, appears in the case before us not only to connect appellant with the offense charged, but also to have made out a complete case of guilt, in which case, as said in the Abbott and Anderson cases, supra, and also in Watson v. State, 90 Texas Crim. Rep., 583, and Walker v. State, 94 Texas Crim. Rep., 653, the error in the charge would not be ground for reversal.

On the other point raised in appellant's motion, we note that when the jury retired and voted the first time they stood eleven to one for conviction. All twelve of the jurors testified on the hearing of the motion for new trial. Each of the eleven who voted guilty on the first ballot, testified that he made no mention in the jury room of the failure of appellant to testify. The twelfth juror,—who voted not guilty,—affirmed that he heard some one in the jury room refer to appellant's failure to testify, but could not say who it was. He admitted that he himself did make such reference while in the jury room, but claimed that he made it casually. We think this clearly brings this case within the general rule that this court must declare in favor of a proper exercise of the discretion of the trial court upon such hearing when there is a conflict in the testimony. The great weight of the testimony heard by the court is in line with the conclusion of the trial court that no improper reference was made in the jury room, and in line with our holding in our former opinion.

The motion for rehearing will be overruled.

*Overruled.*